

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00155-CR

## EX PARTE JOSE LOUIS HERNANDEZ

**From the County Court
Hill County, Texas
Trial Court No. M0858-02**

## MEMORANDUM OPINION

Raising three issues, Appellant Jose Louis Hernandez appeals the denial of his application for post-conviction habeas relief. We will affirm.

On June 16, 2002, Hernandez was arrested for the misdemeanor offense of "assault causing bodily injury to family member." On July 7, 2002, Hernandez pled guilty to that charge and received thirty days in jail, a $300 fine, and court costs. In connection with that guilty plea, Hernandez signed a waiver of counsel.

Thereafter, in late December 2012, Hernandez was arrested for "drinking while driving" and was subsequently detained by the Department of Homeland Security in January 2013. In August 2013, Hernandez filed his application for writ of habeas

corpus, alleging that his 2002 guilty plea was involuntary. Specifically, he alleged that

he did not know or understand English and was not afforded a translator, his waiver of

counsel was involuntary, and he was not admonished on the immigration consequences

of his guilty plea. After an evidentiary hearing, the trial court denied habeas relief.

> We review the trial court's denial of a habeas corpus application for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). An applicant who asserts that her plea was not knowing and voluntary must prove her claim by a preponderance of the evidence. *Id.* We review "the record evidence in the light most favorable to the trial court's ruling and [we] must uphold that ruling absent an abuse of discretion." *Id.* We give almost total deference to the trial court's findings that are "'based upon credibility and demeanor.'" *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)).

*Ex parte Rodriguez*, 378 S.W.3d 486, 489 (Tex. App.—San Antonio 2012, pet. ref'd), *cert.*

*denied*, 134 S.Ct. 785 (2013).

> In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). In an article 11.072 habeas case, such as the one before us, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). "There is less leeway in an article 11.072 context to disregard the findings of a trial court" than there is in an article 11.07 habeas case, in which the Court of Criminal Appeals is the ultimate fact finder. *Id*.

*Ex parte Ali*, 368 S.W.3d 827, 831-32 (Tex. App.—Austin 2012, pet. ref'd). We must also

defer "not only to all implicit factual findings that the record will support in favor of a

trial court's ruling, 'but also to the drawing of reasonable inferences from the facts.'"

*Amador v. State,* 221 S.W.3d 666, 675-76 (Tex. Crim. App. 2007).

In his first issue, Hernandez complains that the trial (habeas) court erred in

denying habeas relief because his waiver of counsel was not voluntary, intelligent, knowing, and competent. The attachment of the right to counsel occurs at all critical stages of prosecution, *Wesbrook v. State,* 29 S.W.3d 103, 117 (Tex. Crim. App. 2000), and a guilty plea is a critical stage. *See, e.g., Ex parte Howard,* 591 S.W.2d 906 (Tex. Crim. App. 1980) (granting habeas relief where petitioner had no counsel for entry of guilty plea); *Ex parte Young,* 417 S.W.2d 403 (Tex. Crim. App. 1967) (voiding convictions where petitioner showed he was not represented by counsel when he pleaded guilty and waived jury trial); *cf. Ex parte Reedy,* 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) (stating that accused has right to effective assistance of counsel in guilty-plea proceedings).

The right to counsel may be waived; to be valid, it must be made knowingly and intelligently, and the defendant must be made aware of the dangers and disadvantages of self-representation. *Allen v. State,* 236 S.W.3d 818, 820-21 (Tex. App.—Waco 2007, pet. ref'd). "To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver." *Id.* at 821 (citations omitted).

The waiver that Hernandez signed provides in pertinent part:

On this 3rd day of July, 2002, I have been advised by the above-named Court of the following:

A. WAIVER OF COUNSEL. 1) The right to represent myself in a criminal proceeding and the dangers and disadvantages of self-representation; and

2) My right to representation by counsel in the trial of the charge pending against me. I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge, save and except that, if the Court determines I have sufficient financial resources, the Court shall order me to pay all or part of the legal services provided, including expenses and costs.

I fully understand my right to (1) and (2) above and, having no further questions about them, I hereby knowingly and intelligently waive my (2) right above and request to [*sic*] Court to proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel.

The document is signed by then-County Attorney Mark Pratt and by Hernandez.

Under Hernandez's signature is the signature of Sandra Daughtery, who is identified as

"Interpreter." The waiver also includes a paragraph that waives the making of a record.

The trial judge at the time, the Honorable Kenneth Davis, signed an order

attached to the waiver that provides in part:

The above WAIVER OF COUNSEL by the Defendant herein having been duly considered by the Court, and it appearing to the Court that the Defendant is herein charged with a MISDEMEANOR, and after the Court has advised the Defendant of his right to counsel provided in Vernon's Ann. C.C.P., Art. 26.04, and the Court being satisfied that said Defendant executed said Waiver of Counsel knowingly and intelligently and voluntarily; therefore, consent and approval of the Court is hereby granted.

In the habeas hearing, Hernandez testified through an interpreter that he was

never offered an attorney, that he came to court and was told "it was going to be time

served," and that he signed a piece of paper. He said that he did not know what the

paper said because he did not speak or understand English at that time. Hernandez

also testified that he was never told that he had a right to an attorney and that, if an

attorney had been offered, he would have accepted it. On cross-examination, Hernandez admitted that he signed the waiver of counsel but denied that an interpreter was present or translated the waiver for him.

Judge Davis testified; he identified the waiver (and his accompanying order) and the signatures of Pratt and Daughtery, whom he said had been a clerk in the county judge's office. Judge Davis said that Daughtery was "very fluent" in Spanish and was used as an interpreter in his court and also in the district court. It was a regular practice in his court to use Daughtery to interpret for defendants who did not understand English. Regarding the waiver that Hernandez signed, Judge Davis said:

> I have no doubt in my mind that she explained it thoroughly, because she would go step by step through it, and then ask each defendant if they understood what she had said. And if they didn't, she would explain it to where they did, and then they would sign off on it.

Judge Davis also testified that it was his practice to make sure that the defendants understood the rights that they were waiving to enter a guilty plea, that he had no reason to believe that Hernandez was not advised of his right to counsel on July 3, 2002, when he appeared in court, and that Hernandez was, in fact, advised of his right to counsel.[1] Judge Davis also explained that, because of the waiver of the record, there was not a court reporter for Hernandez's guilty plea.

In his second issue, Hernandez asserts that the habeas court erred in denying habeas relief because his guilty plea was not made voluntarily, knowingly, and intelligently. Hernandez argues that he was not admonished on the potential and

---

[1] Hernandez's judgment of conviction states that he appeared with counsel; Judge Davis explained that it was a clerical error.

specific immigration consequences of his guilty plea.[2]  His testimony and argument is that he pled guilty for time served and understood that he would remain free, but because he had entered the United States illegally, he has now been detained for eight months (as of the habeas hearing) in immigration jail and is ineligible to have his removal from the United States cancelled because of the nature of the offense (domestic violence) that he pled guilty to.  If he had been informed of that consequence, he would not have pled guilty.

Judge Davis identified the docket sheet from Hernandez's case and testified that it stated that Hernandez was "admonished as to the effect of a guilty plea."  Judge Davis explained that the county attorney "always reminded a defendant that if they were here illegally, that the plea of guilty might cause them to be deported.  That was just a standard thing that we did."[3]  He admitted that the immigration admonishment

---

[2] Hernandez also argues that under *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010), he should have been admonished with specific immigration consequences from his guilty plea.  *Padilla*, however, applies in the context of an ineffective-assistance-of-counsel claim and a criminal-defense attorney's duty to advise the defendant on immigration consequences.  *See id.* 559 U.S. at 368-69, 130 S.Ct. at 1483.  In any event, *Padilla* is not retroactive.  *Chaidez v. United States,* 133 S.Ct. 1103, 1113 (2013); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013).  Furthermore, Hernandez cites no controlling authority that requires a trial judge to admonish a defendant in accord with *Padilla*.

[3] In the case of a guilty plea in a felony case, the defendant is to be admonished as follows:  "(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law; … ."  TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (West Supp. 2014).  This was the law in 2002.  While article 26.13 does not apply to misdemeanor cases, *see State v. Guerrero,* 400 S.W.3d 576, 589 (Tex. Crim. App. 2013), there is no prohibition of using felony admonishments in a misdemeanor plea hearing.  *See id.* at n.58.  *See generally id.* at 588-89 ("appellee was an undocumented immigrant and was deportable for that reason alone, both in 1998 and today.  Had appellee gone to trial with counsel and been acquitted he would not have been transformed into a legal resident.  He could have been deported immediately after walking out of the criminal courthouse.  The prospect of removal therefore could not reasonably have affected his decision to waive counsel and plead guilty.").

was not on the docket sheet but added that it was something that the interpreter would interpret.

Judge Davis's testimony controverted Hernandez on the presence and use of an interpreter (Daughtery) who interpreted and explained the waiver to Hernandez and on being admonished about immigration consequences. By denying habeas relief, the habeas court obviously believed Judge Davis and disbelieved Hernandez. Because the habeas court is the finder of fact and the exclusive judge of the credibility of the witnesses, we conclude that the habeas court did not abuse its discretion in denying habeas relief on Hernandez's allegations that the waiver of counsel was not voluntary, intelligent, knowing, and competent and that his guilty plea was involuntary. Issues one and two are overruled.

Issue three asserts that the habeas court abused its discretion in overruling objections to allegedly irrelevant questions to Hernandez by the State during cross-examination in the evidentiary hearing. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State,* 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

During cross-examination, the State sought to impeach Hernandez's credibility by asking him about his illegal presence in the country, his right to work in the country, and whether he paid income taxes for all the years he had worked. Each of these topics was related to statements in Hernandez's affidavit that was attached to his habeas application. Furthermore, because Hernandez's and Judge Davis's testimony on the

key issues were in conflict, credibility was quite relevant. *See, e.g., Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009) (in "he said, she said" trials involving "two diametrically different versions of an event," the Rules of Evidence … should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of … the defendant"). Accordingly, we cannot say that the habeas court abused its discretion in overruling Hernandez's objections. Issue three is overruled.

Having overruled all of Hernandez's issues, we affirm the habeas court's order denying his application for post-conviction habeas relief.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed April 30, 2015
Do not publish
[CR25]

